STATE of Wisconsin EX REL. Bradley JONES and Leonard Morey, Petitioners-Appellants,†

v.

Judy SMITH, Warden, Oshkosh Correctional Facility, Respondent-Respondent.

Court of Appeals

*No. 01–1673. Submitted on briefs February 21, 2002.—Decided March 27, 2002.*

2002 WI App 94

(Also reported in 643 N.W.2d 548.)

† Petition to review denied 6-11-02.

On behalf of the petitioners-appellants, the cause was submitted on the brief of *Jeffrey W. Jensen* of *Law Offices of Jeffrey W. Jensen*, Milwaukee.

On behalf of the respondent-respondent, the cause was submitted on the brief of *Michael R. Klos*, assistant attorney general, and *James E. Doyle*, attorney general.

Before Brown, Anderson and Snyder, JJ.

¶ 1. BROWN, J. Bradley Jones and Leonard Morey contend that they are entitled to discharge from their Wisconsin sentences because they were transported through the state of Illinois without use of the

Uniform Criminal Extradition Act. This novel argument, based on a fundamental misunderstanding of extradition law, is entirely without merit. We publish this decision as precedent so that no further precious judicial resources need be directed at this theory.

¶ 2. At the time that Jones and Morey filed the habeas corpus petition, they were incarcerated at the Oshkosh Correctional Institution. The habeas corpus petition does not challenge the validity of the judgments of conviction that resulted in their incarceration. Rather, the petition alleges that they were illegally brought into this state without the benefit of the extradition process and that they are therefore entitled to discharge from their Wisconsin sentences.

¶ 3. The petition states that Jones and Morey were transferred in November 1999 to a correctional facility in the state of Texas pursuant to a contract entered into by the Wisconsin Department of Corrections. WISCONSIN STAT. § 301.21(1m)(a) (1999–2000)[1] authorizes the department to "enter into one or more contracts with another state . . . for the transfer and confinement in that state of prisoners who have been committed to the custody of the department."

¶ 4. The petition then asserts that Jones and Morey were brought back to the state of Wisconsin in May 2000, traveling by van through several states, including Illinois. The petition claims that while traveling through Illinois, they demanded that they be released from custody, a request which was ignored. The petition summarizes the claim for relief as follows:

> The detention of Petitioners is illegal for the reasons that the State of Wisconsin intentionally waived juris-

---

[1] All references to the Wisconsin Statutes are to the 1999–2000 version unless otherwise noted.

diction over the Petitioners by transporting them through non-contracting states (Illinois, etc.) where the Wisconsin agents had no legal authority to detain the Petitioners. Petitioners demanded to be released and were denied that request. The petitioners were not absconders or fugitives from justice and, therefore, they were entitled to extradition before being forcibly taken from Illinois into the State of Wisconsin.

¶ 5. According to Jones and Morey, the government is required to use the extradition process whenever and wherever prisoners are transported through noncontracting states on their way to incarceration in a contracting state. This is patently absurd with no basis in the law of extradition or WIS. STAT. § 301.21.

■

¶ 6. WISCONSIN STAT. § 301.21(1m)(a) clearly authorizes the department to transfer and confine prisoners in another state. This grant of authority necessarily implies the authority to transfer a Wisconsin prisoner through a sister state while en route to the contracting state. We note the adage that if the exercise of a power is not expressly granted, any reasonable doubt as to the existence of an implied power should be resolved against the department. *See DOR v. Hogan*, 198 Wis. 2d 792, 816, 543 N.W.2d 825 (Ct. App. 1995). In this case, there can be no reasonable doubt that the grant of authority in § 301.21(1m)(a) would be largely ineffectual if it did not include the implied authority of the department to transfer Wisconsin prisoners through noncontracting states. *Id.* (agencies may have powers that are necessarily implied from the applicable statutes).

¶ 7. In addition, the transportation of a Wisconsin prisoner through a state does not impinge on the sovereignty of that state. Therefore, as we explain below, no factual predicates exist to form the basis of an extradition proceeding.

¶ 8. The law of extradition finds its genesis in Article IV, Section 2, Clause 2 of the United States Constitution[2] and in Wisconsin is implemented by the Uniform Criminal Extradition Act codified in Wis. Stat. § 976.03. Although the Extradition Clause was intended to enable each state to bring offenders to trial as swiftly as possible, it also contemplates the broader objective of promoting comity and national unity:

> The purpose of the Clause was to preclude any state from becoming a sanctuary for fugitives from justice of another state and thus "balkanize" the administration of criminal justice among the several states . . . . In the administration of justice, no less than in trade and commerce, national unity was thought to be served by deemphasizing state lines for certain purposes, without impinging on essential state autonomy.

*State ex rel. Graves v. Williams*, 99 Wis. 2d 65, 71–72, 298 N.W.2d 392 (Ct. App. 1980) (emphasis omitted).

¶ 9. Both the federal extradition laws and the Uniform Criminal Extradition Act have been interpreted to protect a "substantial right." *State ex rel. Niederer v. Cady*, 72 Wis. 2d 311, 323, 240 N.W.2d 626

---

[2] "A Person charged in any State with Treason, Felony, or other Crime, who shall flee from Justice, and be found in another State, shall, on Demand of the executive Authority of the State from which he fled, be delivered up, to be removed to the State having Jurisdiction of the Crime." U.S. Const. art. IV, § 2, cl. 2.

(1976). Contrary to the assertion of Jones and Morey, however, extradition is not a right conferred upon a prisoner; it is a sovereign right of the asylum state, and it is the state, and not the prisoner, which has the privilege to insist on formal extradition. *Id.* at 317–18. As the *Niederer* court explained, "[t]he statutory extradition process is a right conferred upon the asylum state whereby, as a sovereign, it may assert its rights to protect its own citizens or persons within its boundaries from unjust criminal actions that may be brought by a sister sovereign state." *Id.* at 317. A prisoner, therefore, has no right to complain if a sovereignty waives its right to insist on a traditional extradition procedure. *Id.* at 318.[3]

¶ 10. Applying these concepts to this case, the fact that Jones and Morey were transported through the state of Illinois and returned to the state of Wisconsin without use of the extradition process provides no basis for discharge from their Wisconsin sentences. The state of Illinois may have complained and it could have insisted that the state of Wisconsin use the extradition process. However, since the prisoners were not, in fact, fugitives, but were merely passing through Illinois in the continuing custody of Wisconsin agents, the state of Illinois had no connection to these prisoners and no reason to invoke extradition. There is simply no basis for Jones and Morey to assert a claim in their own right

---

[3] When extradition is appropriate or necessary, there are indeed certain statutory rights that are conferred upon persons to be extradited. *State ex rel. Niederer v. Cady*, 72 Wis. 2d 311, 315, 240 N.W.2d 626 (1976). These rights, however, are not of constitutional dimension, unless it appears that a state has applied statutory provisions arbitrarily and capriciously or in a manner that comprises a denial of equal protection under the law. *Id.* at 315–16.

that their custody in Wisconsin is illegal because they were not extradited from Illinois.

¶ 11. Correlatively, Jones and Morey assert that the State intentionally waived its jurisdiction over them and constructively discharged them from their sentences when it transported them through Illinois and back to Wisconsin without using the extradition process. This argument is also without merit. The "almost universal" rule is that the transfer of prisoners between states is not a waiver of jurisdiction for trial or punishment unless waiver was "manifestly intended" by one state at the time it yielded custody to another state. *State ex rel. Graves*, 99 Wis. 2d at 76. It belies common sense to assert that the state of Wisconsin intended to waive its jurisdiction by the act of transporting prisoners through a sister state.

¶ 12. Finally, as the State correctly points out, any failure to properly use the extradition process does not affect the power of the asylum state to try and punish the prisoner. *See Niederer*, 72 Wis. 2d at 316. As the court in *Niederer* clarified, a prisoner may be constitutionally tried for a crime when the extradition process is totally ignored and even where the removal from another state is accomplished by force. *Id.* Therefore, if a prisoner has been found guilty and sentenced in accordance with federal constitutional safeguards, a defect in the extradition process will not result in the discharge of the prisoner's sentence. *Id.* at 316–17.

¶ 13. The protections afforded to Jones and Morey are not found in the law of extradition but in their right to a fair trial. They do not argue that they were denied constitutional safeguards during their trials and

sentencings. Accordingly, the order denying their petition for habeas corpus is affirmed.

*By the Court.*—Order affirmed.